UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| CHASE TOULOU, Individually and on behalf of Others Similarly Situated,<br>Plaintiff,<br><br>v.<br><br>CHIPPEWA RESOURCES INCORPORATED,<br>Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE & CLASS ACTION |

## ORIGINAL COLLECTIVE AND CLASS ACTION COMPLAINT

1. Plaintiff Chase Toulou (Toulou) brings this lawsuit to recover unpaid overtime wages and other damages from Defendant Chippewa Resources Incorporated (Chippewa) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.* and the North Dakota Century Code Title 34 and the North Dakota Minimum Wage and Work Conditions (North Dakota Wage Laws).

2. Toulou worked for Chippewa as a Pipeline Inspector from approximately 2016 through 2021.

3. Chippewa failed to pay Toulou and other similarly situated workers overtime as required by state and federal law.

4. Toulou and the other similarly situated Chippewa workers regularly worked more than 40 hours a week.

5. But these workers never received overtime for the hours they worked in excess of 40 hours in a single workweek.

6. Instead of receiving overtime as required by the FLSA and the North Dakota Wage Laws, Chippewa paid Toulou and the other workers a flat amount for each day worked (a day-rate) without overtime compensation.

7. Chippewa's policy of paying these employees a day rate, with no overtime pay, violates the FLSA and North Dakota Wage Laws.

8. This collective and class action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims because they arise from a common nucleus of operative facts.

11. This Court has personal jurisdiction over all the claims against Chippewa because Chippewa is domiciled in this District.

12. Venue is proper under 28 U.S.C. § 1391(b) & (c) because Chippewa conducts substantial business operations and maintains their corporate headquarters in this District and Division.

## PARTIES

13. Chippewa is a North Dakota corporation and may be served through its registered agent: Julia Williamson, 1408 20th Ave SW Ste 6, Minot, ND 58701-6494, or wherever it may be found.

14. Toulou worked for Chippewa as a Pipeline Inspector from approximately 2016 through 2021.

15. As a Pipeline Inspector, Toulou's duties included inspecting pipelines for faults, submitting daily reports regarding the construction of the pipeline, and numerous other forms of non-exempt work.

16. Throughout his employment with Chippewa, Toulou was paid a day-rate with no overtime compensation.

17. Toulou's relationship with Chippewa was an employer/employee relationship.

18. Toulou's written consent is attached as <u>Exhibit A</u>.

19. Toulou brings this action on behalf of himself and all other similarly situated workers that were paid under Chippewa's day-rate system.

20. Despite regularly working more than 40 hours each week, Chippewa paid these workers a flat amount for each day they worked and did not pay them any overtime compensation when they worked in excess of 40 each week.

21. First, Toulou represents a class of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). The FLSA class is defined as:

> **All workers, employed by or working on behalf of, Chippewa Resources Incorporated that were paid a day-rate with no overtime at any time within the past three (3) years** (FLSA Class Members).

22. Second, Toulou represents a class of similarly situated employees under North Dakota Wage Laws and pursuant to Federal Rule of Civil Procedure 23. The North Dakota Class is defined as:

> **All Pipeline Inspectors who performed work in North Dakota and were paid under Chippewa's day rate system at any point in the past 2 years** (North Dakota Class Members).

23. Collectively, the FLSA Class Members and the North Dakota Class Members are referred to as the "Putative Class Members."

24. The Putative Class Members are easily ascertainable from Chippewa's business and personnel records.

## COVERAGE UNDER THE FLSA

25. At all relevant times, Chippewa has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

26. At all relevant times, Chippewa has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

27. At all relevant times, Chippewa has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Chippewa has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and oilfield equipment - that have been moved in or produced for commerce.

28. In each of the last three years, Chippewa has had annual gross volume of sales made or business done of at least $1,000,000.

29. At all relevant times, Toulou and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

30. Chippewa treated Toulou and the Putative Class Members as employees and uniformly dictated the pay practices applied to Toulou and the Putative Class Members.

31. Chippewa's uniform day-rate scheme, depriving its workers of overtime compensation for weeks in which these workers work over 40 hours is, in and of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## THE FACTS

32. Chippewa is one of the largest independent oil and natural gas production companies in North Dakota and operates throughout the United States.

33. To provide these services, Chippewa hires oilfield personnel to work on its behalf, including Pipeline Inspectors like Toulou.

34. During the relevant period, these workers regularly worked for Chippewa in excess of 40 hours a week for weeks at a time.

35. For example, Toulou regularly worked over 80 hours a week on average.

36. During the relevant period, these workers worked for Chippewa on a day-rate basis.

37. During the relevant period, these workers were not paid overtime for the hours they worked for Chippewa in excess of 40 hours each week.

38. These workers make up the proposed Putative Class.

39. While exact job titles and job duties may differ, Chippewa subjected these workers to the same or similar illegal pay practices for similar work.

40. As a Pipeline Inspector, Toulou regularly worked more than 10 hours each day, often for weeks at a time.

41. Toulou did not hire or fire employees.

42. Toulou did not exercise discretion and judgment as to matters of significance.

43. To the contrary, Toulou's work was governed entirely by Chippewa.

44. The Putative Class Members performed the same general job duties performed by Toulou.

45. The Putative Class Members worked the same or similar schedule worked by Toulou, regularly working more than 40 hours each week. Toulou's work schedule is typical of the Putative Class Members.

46. During the relevant period, Chippewa paid Toulou and the Putative Class Members on a day-rate basis with no overtime compensation.

47. Toulou and the Putative Class Members never received a salary.

48. Toulou and the Putative Class Members received a day-rate regardless of the number of hours they worked in a week, even if they worked more than 40 hours in a workweek.

49. Chippewa determined the amount and type of compensation paid to Toulou and the Putative Class Members.

50. Chippewa set Toulou's and the Putative Class Members' rates of pay, their work schedules, and effectively prevented them (or outright prohibited them) from working other jobs for other companies while they are working on jobs for Chippewa.

51. Toulou and the Putative Class Members worked in accordance with the schedule set by Chippewa.

52. Toulou and the Putative Class Members had to follow Chippewa's policies and procedures.

53. Toulou and the Putative Class Members had to adhere to the quality standards put in place by Chippewa.

54. Toulou and the Putative Class Members did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, Chippewa provided Toulou and the Putative Class Members with the equipment, programs, and facilities necessary for them to perform the work required of them.

55. Toulou and the Putative Class Members did not provide the significant equipment and programs they worked with daily, such as the oilfield equipment, office space, computers, and other necessary equipment.

56. Chippewa made these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Toulou and the Putative Class Members work.

57. At all relevant times, Chippewa maintained control, oversight, and direction of Toulou and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

58. Chippewa controlled both Toulou's and the Putative Class Members' pay.

59. Likewise, Chippewa controlled Toulou's and the Putative Class Members' work.

60. Toulou's and the Putative Class Members' work had to adhere to the quality standards put in place by Chippewa.

61. Toulou and the Putative Class Members were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

62. Chippewa knew Toulou and the Putative Class Members regularly worked for 10 or more hours a day for weeks at a time.

63. Chippewa's records reflect the fact that Toulou and the Putative Class Members regularly worked far in excess of 40 hours during certain workweeks.

64. Toulou and the Putative Class Members did not receive overtime for hours worked in excess of 40 in any of those weeks. Instead, Toulou and the Putative Class Members were paid on a day-rate basis.

65. Chippewa set these workers' schedules and compensation; supervised them; and required them to adhere to strict guidelines, directives, and Chippewa's policies and procedures.

66. The work Toulou and the Putative Class Members performed was an essential part of Chippewa's core businesses.

67. Chippewa controlled Toulou's and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

68. Chippewa controlled all the significant or meaningful aspects of the job duties Toulou and the Putative Class Members performed by requiring them to strictly adhere to Chippewa's directives, policies, and procedures.

69. Chippewa exercised control over the hours and locations Toulou and the Putative Class Members worked, the tools and equipment they used, the data they analyzed, and the rates of pay they received.

70. Even though Toulou and the Putative Class Members may have worked away from Chippewa's offices without the constant presence of Chippewa supervisors, Chippewa still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

71. Very little skill, training, or initiative was required of Toulou and the Putative Class Members to perform their job duties.

72. Indeed, the daily and weekly activities of Toulou and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Chippewa.

73. Virtually every job function was predetermined by Chippewa, including the tools and equipment used, the data to review and compile, the schedule of work, and related work duties.

74. Toulou and the Putative Class Members performed routine job duties largely dictated by Chippewa.

75. All of the Putative Class Members performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

76. All of the Putative Class Members worked similar hours and were denied overtime as a result of the same illegal pay practice.

77. All of the Putative Class Members worked in excess of 40 hours each week and often worked more than 80 hours in a workweek.

78. Chippewa uniformly denied Toulou and the Putative Class Members overtime for the hours they worked in excess of 40 hours in a single workweek.

79. Toulou and the Putative Class Members were not employed on a salary basis. Specifically, Toulou and the Putative Class Members did not, and never did, receive guaranteed weekly compensation of at least $684 per week irrespective of days worked (i.e., the only compensation they received was the day-rate they were assigned for all hours worked in a single day or week).

80. Chippewa's day-rate policy violated the FLSA because it deprived Toulou and the Putative Class Members of overtime for the hours they worked in excess of 40 hours in a single workweek.

81. Chippewa knew Toulou and the Putative Class Members worked over 40 hours a week.

82. Chippewa knew, or showed reckless disregard for whether, Toulou and the Putative Class Members were not exempt from the FLSA's overtime provisions.

83. Nonetheless, Toulou and the Putative Class Members were not paid overtime.

84. Chippewa knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA and North Dakota Wage Laws.

## COLLECTIVE & CLASS ACTION ALLEGATIONS

85. Toulou brings this lawsuit as a collective action under the FLSA and as a class action pursuant to North Dakota Wage Laws.

86. The Putative Class Members were victimized by Chippewa's pattern, practice, and/or policy which was in willful violation of the FLSA and North Dakota Wage Laws.

87. Other Putative Class Members worked with Toulou and indicated they were classified and paid in the same manner under Chippewa's day-rate scheme and performed similar work without overtime pay.

88. Based on his experience with Chippewa, Toulou is aware that Chippewa's illegal practices were imposed on the Putative Class Members.

89. The Putative Class Members are similarly situated in all relevant respects.

90. The Putative Class Members are blue-collar workers.

91. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

92. The illegal day-rate policy that Chippewa imposed on Toulou was likewise imposed on all Putative Class Members.

93. Numerous individuals were victimized by this pattern, practice, and policy which was in willful violation of the FLSA and North Dakota Wage Laws.

94. The Putative Class Members were similarly denied overtime when they worked more than 40 hours per week.

95. The overtime owed to Toulou and the Putative Class Members will be calculated using the same records and using the same formula.

96. Toulou's experiences are therefore typical of the experiences of the Putative Class Members.

97. The specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

98. Toulou has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

99. Like each Putative Class Member, Toulou has an interest in obtaining the unpaid overtime wages owed under federal law.

100. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

101. Absent a collective action, many Putative Class Members will not obtain redress of their injuries and Chippewa will reap the unjust benefits of violating the FLSA and North Dakota Wage Laws.

102. Further, even if some of the Putative Class Members could afford individual litigation against Chippewa, it would be unduly burdensome to the judicial system.

103. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

104. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

105. Among the common questions of law and fact are:

　　i. Whether Chippewa employed the Putative Class Members within the meaning of the FLSA and North Dakota Wage Laws;

　　ii. Whether Chippewa's decision to pay a day-rate with no overtime compensation to these workers was made in good faith;

　　iii. Whether Chippewa's violations of the FLSA and North Dakota Wage Laws were willful; and

　　iv. Whether Chippewa's illegal pay practice applied to the Putative Class Members.

106. Toulou and the Putative Class Members sustained damages arising out of Chippewa's illegal and uniform employment policy.

107. Toulou knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

108. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Chippewa's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

109. Chippewa is liable under the FLSA and North Dakota Wage Laws for failing to pay overtime to Toulou and the Putative Class Members.

110. Consistent with Chippewa's illegal day-rate policy, Toulou and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

111. As part of its regular business practices, Chippewa intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Toulou and the Putative Class Members.

112. Chippewa's illegal day-rate policy deprived Toulou and the Putative Class Members of the premium overtime wages they were owed under federal and state law.

113. Chippewa was aware, or should have been aware, that the FLSA and North Dakota Wage Laws required it to pay Toulou and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

114. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA and North Dakota Wage Laws who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

115. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b) and North Dakota Wage Laws.

116. Those similarly situated employees are known to Chippewa, are readily identifiable, and can be located through Chippewa's records.

## FIRST CAUSE OF ACTION –
## VIOLATION OF THE FLSA

117. Toulou realleges and incorporates by reference all allegations in preceding paragraphs.

118. Toulou brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

119. Chippewa violated, and is violating, the FLSA by failing to pay Toulou and the Putative Class Members overtime.

120. Chippewa misclassified Toulou and Putative Class Members for purposes of the FLSA overtime requirements.

121. Toulou and the Putative Class Members were Chippewa's employees for purposes of the FLSA overtime requirements.

122. Chippewa was Toulou's and the Putative Class Members' employer under the FLSA. Chippewa suffered or permitted Toulou and the Putative Class Members to work for or on its behalf during the relevant period.

123. Chippewa cannot meet its burden to demonstrate Toulou and Putative Class Members are exempt from overtime under the administrative exemption.

124. Chippewa cannot meet its burden to demonstrate the Toulou and Putative Class Members are exempt from overtime under the executive exemption.

125. Chippewa cannot meet its burden to demonstrate Toulou and Putative Class Members are exempt from overtime under the professional exemption.

126. Chippewa cannot meet its burden to demonstrate Toulou and Putative Class Members are exempt from overtime under the highly compensated exemption.

127. Chippewa failed to guarantee Toulou and the Putative Class Members a salary.

128. Chippewa failed to pay Toulou and the Putative Class Members overtime.

129. Chippewa paid Toulou and the Putative Class Members a day-rate.

130. Chippewa knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Toulou and the Putative Class Members overtime compensation.

131. Chippewa's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

132. Accordingly, Toulou and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## SECOND CAUSE OF ACTION –
## FAILURE TO PAY WAGES UNDER NORTH DAKOTA LAW

133. Toulou realleges and incorporates by reference all allegations in preceding paragraphs.

134. Toulou brings this case as a Rule 23 Class action for the North Dakota Class Members consisting of "Pipeline Inspectors of Chippewa who were, at any point in the past 2 years, paid under Chippewa's day rate system and who performed work in North Dakota."

135. Defendant failed to pay premium overtime wages to Toulou and the North Dakota Class Members in violation of North Dakota Century Code Title 34 and the North Dakota Minimum Wage and Work Conditions Order (N.D. Admin. Code § 46-02-07-01 et seq.) (the "North Dakota Wage Laws").

136. At all relevant times, Chippewa was subject to North Dakota Wage Laws.

137. At all relevant times, Chippewa employed each member of the North Dakota Class as an "employee" within the meaning of the North Dakota Wage Laws.

138. The North Dakota Wage Laws require an employer like Chippewa to pay employees at one and one-half times the regular rate of pay for hours worked in excess of 40 hours in any one week.

139. Toulou and the members of the North Dakota Class were entitled to overtime pay under the North Dakota Wage Laws.

140. Within the relevant period, Chippewa had a policy and practice of failing to pay overtime to Toulou and each member of the North Dakota Class for hours worked in excess of 40 hours per workweek.

141. Through their knowing or intentional failure to pay Plaintiffs and the North Dakota Class the appropriate overtime wages for hours worked in excess of 40 hours per workweek, Defendant willfully violated the North Dakota Admin. Code, § 46-02-07-02(4).

142. Due to Defendant's willful violation of the North Dakota Admin. Code, Toulou and each member of the North Dakota Class are entitled to unpaid overtime in amount equal to one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek; applicable interest; all available penalty wages; liquidated damages; and such other legal and equitable relief as the Court deems just and proper.

143. Toulou and each member of the North Dakota Class are entitled to attorneys' fees, costs, and expenses of this action, to be paid by Chippewa, as provided by North Dakota law.

## JURY DEMAND

144. Toulou demands a trial by jury.

## PRAYER

WHEREFORE, Toulou, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

    i. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the FLSA

      Class Members to permit them to join this action by filing a written notice of consent;

ii. An order certifying a class action under Rule 23 for the purposes of the claims under North Dakota law;

iii. A judgment against Chippewa awarding Toulou and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

iv. Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA and North Dakota Wage Laws;

v. An order awarding attorneys' fees, costs, and expenses;

vi. Pre- and post-judgment interest at the highest applicable rates; and

vii. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
Texas Bar No. 24014780
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Taylor Montgomery**
Texas Bar No. 24106326
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tmontgomery@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**